Okay, when you're ready. Good morning. May it please the court, I'm Erin Norgaard and I represent Yvette Bailey in this matter, the plaintiff and appellant. I'm going to try to reserve three minutes of my time today and I will go ahead and watch the clock. Before this court are important questions of Washington employment law, the answers to which could have a broad and profound effect on the application of Washington's common law tort of wrongful discharge in violation of public policy. In this case, the district court improperly narrowed application of the tort and committed reversible error when it found that Ms. Bailey's twice reporting of conduct that she reasonably believed might violate tax law was not protected activity under Washington law. And then further held that even if it was, such protected activity was not a substantial factor in the defendant's decision to terminate her employment after 26 years. The district court is wrong and should be reversed. Wrong on both counts? Pardon? Wrong on both propositions? Correct. I want to first address this morning the question on the protected activity component. Now in this case, the district court erroneously found that Ms. Bailey did not engage in protected activity for two reasons. The first was that she failed to identify and reported to the defendants actually and in fact violated federal tax law. And that it was not enough for her to prove a reasonable belief in the potential violation of law. The court also held that Ms. Bailey did not engage in protected activity because she failed to prove a subjective intent to further the public good when she reported the excessive markups to the defendants, even though the evidence shows that she reported for purposes of protecting her and not violating a potential law. Is it clear or not clear under the law of Washington that a person in her position, your client's position, has to have a subjective intent of affecting public policy by engaging in whistleblowing? Your Honor, I don't believe that any court in Washington has explicitly held that a plaintiff must prove that that is her subjective intent. So long as the conduct in which the plaintiff engages is rooted in public policy and ultimately furthers the public good. Should we ask by a certified question of the Washington Supreme Court, it's a dispositive issue, isn't it? It is a dispositive issue. If they say it's not required, case goes forward. If they say it is, school's probably closed. Correct. That is one of the two questions that the plaintiff has proposed. For certification in this case, and we think that it is an important question, that if this court finds any confusion or inconsistency in the language that is cited in the many cases in the briefing, that the court really should submit that question to the court in Washington to decide. I would submit to the court my analysis and my understanding of the case law is that that ruling just simply doesn't make any sense. That so long as the plaintiff's conduct is engaged or is that she's engaged in is rooted in public policy, then there's no question that the court should submit that question to the court in Washington to decide whether or not that is her subjective intent or whether or not that is her subjective intent. Then her subjective motivation really doesn't matter. Now, while an employee's motive . . . But that doesn't make a lot of sense to me. The basic idea of whistleblowing is that you're ratting on whoever it is, the employer usually, but it could be somebody else. Here, by her own testimony, she's reporting this to her superiors within the company in order to follow the guidelines of the company. And Judge Kuhnhauer says, and I think he's got full evidence in the record to support that, the evidence demonstrates that Bailey made the report for her own benefit and the benefit of employers. That does not sound like whistleblowing to me. I would disagree with the court, with the district court's ruling to that effect. I don't believe that Washington forecloses whistleblowing or whistleblower protections for employees who report potential conduct directly to their employer. In fact, I think we would want to encourage an employee who suspects that there may be potential violations of the law to first go to his or her employer. But the evidence presented by your own client is that she's getting reports that the charges are not allocated properly. She knows from the standpoint of the company that if they're not allocated properly, they'll smell trouble from the taxing authorities, and so she reports that in order to get the thing corrected. She doesn't report that as saying, you guys are violating the tax law. She's saying, I think we've got a problem here, and you're trying to avoid getting into trouble with the IRS. That's her own testimony. That is her testimony, but her testimony was also that she knew to report that information to her employers because they had told her over the years that margins in the range that she had detected could subject them to adverse tax consequences. And she testified both after her initial report in or around February of 2015, and then again in July of 2015, that she reported the markups that she found to Mr. Kaiser and Ms. Bersari because she wanted to prevent them from getting in trouble with the law. Absent any evidence of an affirmative statement by the plaintiff that I did what I did in order to further some broader public policy. That's the Bennett v. Hardy case, which is cited where the plaintiff hired an attorney to protect herself from the employer's discriminatory practices. Becker v. Community Health Services, the plaintiff in that matter refused to falsify some financial reporting in order to protect himself from criminal liability. In the Rickman case, which we rely on extensively for the other legal issue in this matter, the plaintiff in that case reported what she believed to be a potential violation of HIPAA in order to prevent her employer from violating the law. You're arguing that the answer to a certified question we talked about just earlier doesn't matter. Well, I think and I think that the court raises a good point because I think that the district court committed legal error in finding that motive is some legal litmus test that a plaintiff must establish in order to proceed with her claim in the first instance. But I think even in this case, the factual record bears evidence that Ms. Bailey in fact reported to protect her employer from violating the law, which is protected activity recognized under a number of cases in Washington. I suppose my problem with your understanding your argument is that this whistleblowing provision comes up in the context of the wrongful discharge analysis. And that is designed to make sure that employees are not chilled in their opportunity to report. If the policy here is not we want to make sure that public policy is protected, it's an employee statute. So if the employee is only trying to advance private interests and by happenstance there may be some public policy aspect to it, why should that be the focus of a wrongful discharge tort? Because the purpose of the wrongful discharge tort is to prevent discharges that contravene a clear mandate of public policy. But it's not to make sure we have wonderful public policy in this particular state. It's that this employee has an opportunity to when they think there is some public wrong to advance that. If the employee doesn't have that frame of mind, then to some extent I'm not sure why there's any policy issue in protecting that. Well, I guess I would respond and hopefully I answer the question. If not, I'll try better. That I think an employee's motive in why he or she would come forward and report conduct to his or her employer, I think that certainly might be relevant to an inquiry of the reasonableness of that particular employee's belief in something. But so long as what the plaintiff is reporting furthers some public good, then I believe that it is protected activity and that it is consistent with the protections that Washington's torts affords its employees. I hope I answered the question. It has to be the public good aspect because there is the case law that indicates if, I think it was in the merger context, that if, it might be the Farnham case, that there's no public policy aspect to that. You agree in that circumstance that simply an employee reporting that there's been some problem in terms of the company's own policies that doesn't have any implication for public policy, that wouldn't be covered? That's correct because in that circumstance where the employee is reporting specifically and only to advance some internal policy, then I don't believe that that conduct would be rooted in public policy. In this particular case, we have complaints of conduct that are rooted in a clear mandate of public policy in the tax law. So it's a distinct situation. Let's try that following hypothetical. I'm working in a company and my job is to supervise various charges and how they're allocated within the company. And if the charges are allocated in a certain way, it looks as though the company may be violating the tax laws. And so I look at it all. And every now and again, the charges are allocated improperly within the company so as to, I think, actually violate the tax laws. I report that to my superiors. My superiors direct me and then direct the other people, don't do that. Have I engaged in whistleblowing? I believe that in those circumstances, so long as the conduct that you are complaining about is rooted in some recognized public policy. Well, what I'm reporting to my superior is, listen, those people down there in this company are violating the tax laws. We need to fix that. The employer, my supervisor, fixes it. I think I've just done my job. I've kept the company from violating the tax laws. Well, I think that that's the circumstance that was presented in the Rickman case, where the employee in that particular circumstance reported for the purpose of preventing a potential violation. Now, if an employee reports what he or she believes to be a potential violation of law, which is clearly recognized in a statute or a judicial opinion, and then the employer takes action based upon that and takes corrective measures to prevent what could be a potential law violation and then takes retaliatory action against the employee for speaking out, I do think that that would be protected activity. But why would there even be retaliation if I was just doing my job? Well, that's ultimately a question of fact. Well, but retaliation means I've done something to my boss and the like. But under my hypothetical, I did something my boss liked. That is to say, I fixed the problem. Well, I think if there's no adverse employment action, then there's going to be no claim for wrongful termination in violation of public policy. I mean, the claim presupposes a wrongful termination. Now, in Ms. Bailey's case, although she testified that she had been asked by the defendants to look at the pricing issues over the years, I think it's important to know that her job duties were not to monitor those price lists. Her primary job duty was to purchase components from contract manufacturers in China. And she was ultimately doing the direct negotiations that the defendants' company in the Bahamas was supposed to be doing. And because of her unique position within that company, she gained access over the years to this confidential pricing information. And even Mr. Kaiser testified that they never really asked her to monitor these prices. She helped herself to this information and kind of worked herself into the position. But because she was one of the few people within the company who had access to it, they asked her to monitor it. So as I understand your position, I may be overstating it. You tell me if I am. is that in the case of a whistleblower, if no one outside the company hears a whistle, it's still whistleblowing. I believe that's the case. There is no Washington law that I am aware of that requires an employee to take their reports outside of the agency. You can simply be motivated by, as a whistleblower, by saying, I think there are some problems here, and I bring this up to get them corrected for the benefit of my employer. That's correct. And in addition, I mean, not only does the reporting benefit the employer, it also advances public policy because by taking action and bringing reports to an employer that can potentially prevent law violations, in this case potential violations of tax law, that does further the public policy, and that is protected activity. I'm running out of time. I'd like to reserve the remainder of my time for rebuttal. Let's go to the other side, and then you have some time. Thank you. Good morning, Your Honors, and may it please the Court. For the record, my name is Kevin Hamilton, and I appear today on behalf of the defendants' appellees. The district court, after a full five-day trial, entered judgment on plaintiff's claims for three independently sufficient reasons. Was it a full trial, or did this happen at the end of plaintiff's evidence? End of plaintiff's case. Yes. Although almost, they had called many of the defendant witnesses adverse, so. Five days and, right, I got it. Okay. An affirmance of any one of those three rulings resolves this appeal as a matter of law. Defendants submit that all three should be affirmed and were correct. The first, the district court dismissed Ms. Bailey's claim because she did not present evidence that her act of reporting excessive price margins was a violation of the letter or the policy of the federal tax law. The district court noted that under Washington law, when financial misconduct is the subject of a whistleblowing claim, courts have held that employees must demonstrate their employer committed an actual violation of the law or the policy behind the law. And there are three cases that make this very clear, the Supreme Court's decision in Ellis versus the City of Seattle, and then there's two Washington Court of Appeals decisions. I regard that law as not entirely as settled as you'd like me to think it is. Well, Bott and Wozniak both specifically affirmed jury instructions that I believe were clear that said the plaintiff must demonstrate an actual violation of the law or the policy behind the law. That was the phrase used in the jury instructions. If I import into a sense of Washington law the ordinary retaliation law that we see in federal court, under federal law, it is sufficient that there be a good faith belief that the person, that something's wrong and you report that. You're protected if you've got a good faith belief and then you get retaliated against for acting on the good faith belief. You don't have to prove the underlying reality of what you believe. That's absolutely correct. And I'm having trouble being convinced that Washington law is absolutely inconsistent with that point. It absolutely is, Your Honor. Or just a valid argument. Well, the distinction in Washington law, remember that this tort when it was created by the Washington Supreme Court about 30 years ago is a narrow exception to the employment at will doctrine. And as the tort has evolved over the last 30 years, they've made a distinction between cases of immediate threat to personal harm. Now, that's the case like Ellis where the conduct involved the disabling of a fire alarm system for key arena. That's, or the Gardner case, which was a hostage situation. In those cases, a reasonable good faith belief is enough. But the court has carefully distinguished in a whole series of cases financial misconduct cases, and that's Bott and that's Wozniak. But the Rickman case in that other category you've just discussed, because it's talking about HIPAA violations, it's, because as I understand that case, it turned out that there wasn't any actual HIPAA violation, but it's because it involves personal safety? No, that's not right, Your Honor. Actually, there was a violation in Rickman. It wasn't even an issue because the defendants admitted it. If you read the opinion, it's an interrogatory answer that the defendants. They determined at the end of the day it wouldn't have been a HIPAA violation. No. It wasn't an issue decided by the court. It was admitted by the defendants in an interrogatory answer. So the language in Rickman that appellants cite actually addresses a different point, because the question of whether there was an actual law violation wasn't presented before the court. Was there ever a determination that tax fraud had been engaged in here? In this case? In our case? No, absolutely not, Your Honor. In fact, there was no evidence presented about the tax returns. Ms. Bailey admitted that she'd never seen the tax returns. She doesn't know how the specific charges were addressed between the two companies. She just raised, to Judge, Your Honor, Judge Fletcher's point, she was doing her job. She was asked. This was part of her job. And, indeed, if this, if simply monitoring the prices she negotiated with the Chinese contract manufacturers and then looking at the resulting pricing list and saying, golly, I negotiated on these three parts out of these hundred a discount that's not reflected. We need to correct it. If that's whistleblowing, then any accountant, any pricing or buyer who notices a discrepancy and is required as part of their job to report it to the employer and Judge Fletcher and the employer says, thank you. That's great. And as the record demonstrates here, we love what you're doing. Here's a 10 percent raise. And we want you to take on additional responsibilities for monitoring not only all the contract manufacturers in China, but the contract manufacturers in India as well because you're doing such a great job. That's not whistleblowing. That's her simply doing her job. So the first point I would make is Washington law very carefully distinguishes financial misconduct cases. And it is different, Your Honor, from the mine run of retaliation cases. And Washington has made that clear in the Ellis case where they looked at Bott and Wozniak. They noted this distinction for financial misconduct cases and they said, we're not going to disturb it. And in the 15 years, 18 years since the Ellis case, it decided those cases and that distinction has not been disturbed since. The most recent pronouncement is Martin v. Gonzaga. That was from the Washington Supreme Court just last year. We provided it to the court after the briefing was completed in a 28-J filing. There the court directly rejects the suggestion that a good faith belief is enough. Quote, even if Martin truly believed that the unpadded walls posed a danger to students, this does not change the analysis as the focus on whistleblowing matters is on the employer's level of wrongdoing, not to address Martin's actions to address what he perceived to be wrongdoing. None of these cases are unusual or outliers. Since the first recognition of the tort 30 years ago, the Washington Supreme Court has consistently insisted on an actual violation in cases involving financial misconduct. So there's no confusion here. Farnham and Dicoma's, Judge Seberg, you cited to Farnham earlier, both of those were wrongful discrimination. I'm sorry, wrongful discharge cases where the employer's conduct did not actually violate the law or policy, and they were dismissed on that basis. So Rickman, I think we've addressed already, is different. The lower court correctly identified this flaw and ruled on that basis. The one last point on this prong that I would point out is that Rickman's companion case, the Rose case, Rose v. Anderson, Hayne, Grain in 2015, the court went out of its way to say decisions prior to Gardner, that was 1996, remain good law. That includes Dicoma's. That includes Farnham. If the court had intended at that time to overrule those cases and eliminate this distinction in financial misconduct cases, that's a really odd statement for the court to have made. Instead, the court would have said, to the extent our prior decisions were inconsistent, they're overruled. Instead, the court went out of its way to say they're not. So that's ground one, that's dispositive, and all other issues fall. The second basis for the lower court's decision was that Ms. Bailey failed to demonstrate she was acting in furtherance of the public good and not merely for private or proprietary interest, and several questions earlier this morning raised that issue. This is a second independent ground for affirming if you rule on this ground, it doesn't matter what the rule is for any others. The acting in the public good element is central to the claim, and, of course, has been an essential element of the wrongful discharge tort since it was first embraced by the Washington Supreme Court in Thompson. The court has repeatedly emphasized that an employee asserting such a claim must have sought to further the public good, not merely private or proprietary interest, in reporting the alleged wrongdoing. And that requirement is reflected across all of the cases, Thompson, Dicoma's, Farnham, and most recently in the Martin case. Ms. Bailey made no effort to satisfy this requirement. She reported the price errors, as the questions from the panel have indicated, because that's her job. She admits that she never raised any issues of tax liability or tax evasion. She never said the words tax. She certainly never said the words tax fraud to her employer, much less anyone else. She simply reported that certain prices she had negotiated were not reflected in the updated price list. That's not remarkable. That's exactly what her job was. As I said, this tort is a carefully delimited exception to the employment at will doctrine, and if this is whistleblowing, then that exception has truly swallowed the rule. At trial, Ms. Bailey admitted that she had no training in tax law or accounting. She had no responsibilities for tax matters. She never saw any of the tax returns. She admitted that she was motivated not to protect the public good, but because this was part of her job. It's correct, isn't it, that in 2004, Alpha and Adair pled guilty to falsifying tax returns? That's absolutely correct, Your Honor. It's not part of the evidentiary record that was admitted before the court because it was excluded. That testimony dealt with the treatment of international sales commissions. It has nothing to do either with this, the allegations here, or the allegations or the individuals that were involved here. Prior in time to the events that led to her discharge? Well prior to it. The events that led to her discharge in 2015, the events that happened in those tax returns were in the 1990s. Was she aware of this? The evidence in the record demonstrates she had heard about it. She wasn't involved in it. She knew about it. The court excluded that evidence on the grounds of 403. It was obviously quite prejudicial, and the probative value was quite limited. Although plaintiff has challenged that on appeal, the standard for review of that decision is abuse of discretion. And I believe the decision was clearly a correct decision, given how limited the relevance even potentially could be for this case was grossly outweighed by the prejudicial value. And whether you agree with that or not, it certainly wasn't an abuse of the trial court's discretion. The last prong, the last reason for the trial court's ruling here was that she has failed to establish causation. That is, that her reporting of pricing errors was a substantial factor in her termination. Again, it's a separate, independent, third reason for the trial court's decision. On that one, I have to say that I would have left that one to the jury. I understand, Your Honor. What the trial court, after hearing the evidence, concluded was that Ms. Bailey had failed to provide sufficient evidence to show that her reporting of the pricing list was a substantial factor. The undisputed evidence shows that after she reported these pricing errors, again, she didn't use the word fraud. She didn't go to an external reporting, you know, go to the IRS or anyone else outside of the company. She went and did her job by reporting the pricing errors. She received a 10 percent raise, new responsibilities. She was praised by her employer. Yes, but isn't there certainly enough there to make some inferences? I mean, this is a sort of unusual circumstance. This whole Bahamas trip and all of the Sturm and Drum that went along with that. I mean, there are some things from which a jury could infer that part of the reaction of the company is the whistleblowing activity. Not necessarily that they proved it, but at least that the jury can make inferences about it. I think there are very few whistleblowing cases in which the retaliatory action against the employee involves an all-expense paid trip on a private jet to the Bahamas. And the reason- The circumstances of the trip are very unusual, it appears. I understand your position that why is there a complaint about this? This is some kind of a benefit. But there was enough evidence, it seemed, in the record that this was not the ordinary trip. This was sort of an unusual circumstance. It was an unusual circumstance because of the miscommunication between the management company in the Bahamas, where Mr. Kaiser lives and where part of the company is located, and Ms. Bailey. And the idea was to sort it out. And because Ms. Bailey had these new responsibilities, they were going to meet. I don't think that's unusual. The unusual- She says it was a setup. And I don't think it's so absolutely out of the ballpark to believe it was a setup. I think I would have left that one to the jury. My guess is the jury would have said fully, but I would have left it to the jury. The most compelling evidence before the court was the e-mail from Peter Turnquist, the manager in the Bahamas, about behavior that happened down there. Now, the suggestion, Your Honor, that it was a setup is interesting. I mean, I suppose you could try and make that argument, but if Mr. Kaiser wanted to terminate her, he could have done it easily. It's an at-will employment state. He didn't need to engage. You know, the idea that he's going to send all of these e-mails, that he's going to give her a raise, that he's going to offer responsibility for the Indian contract manufacturers, take her down to the Bahamas, and then involve the deputy prime minister of the Bahamas to write this scathing e-mail, which he then is going to respond to in real time, which was before the court, I don't think is possible. Of course, it simply has to be a substantial factor. It doesn't have to be the only reason she's terminated. So the reason it could be still a viable claim, even if a healthy part of the termination decision was based on this conduct in the Bahamas that alienated Mr. Turnquist, correct? May I respond? I'm over time. Yes, please. Okay, thank you. Yeah, but this, you know, once that evidence is put forward, the e-mail and the reaction to the e-mail, and the close timing of the termination in response to the e-mail and that explanation, now the burden shifts under Washington law to plaintiffs to demonstrate pretext. And as the Martin case, and I urge the court to look at Martin on this, it holds speculation is not enough. You've got to show that that e-mail was pretext. And that's where the judge, I think, concluded that's just not enough. Okay, thank you. Thank you, Your Honor. You've saved some time. I do want to briefly address Rickman and how this court should apply it, because I do think Rickman from 2015 is really the closest case that this court has in interpreting what the current state of Washington law is. And I would encourage the court to read Rickman carefully, as well as the Court of Appeals decision upon which it was based. Because what the court held in Rickman, in a case where the plaintiff had only a gut feeling that the conduct that was occurring might potentially violate the law, the court in Rickman stated that it was rejecting a narrow reading of dycomes that the defendants had relied upon in that particular case, and made a finding that they do not hold, nor have they ever held, that a plaintiff has to prove an actual violation of the law. I recognize that there are older cases predating Rickman from which appellees can pull language and argue for this reasonable belief standard. But it's hard for me to understand how the district court's opinion can be reconciled with language in Rickman that clearly seems to state to the contrary. Well, I think the argument seems to be that there's this fundamental distinction between financial cases and safety cases, and you reject that. I do. I do believe that in Rickman the court expanded the reasonable belief standard to all wrongful termination claims predicated on whistleblower activity. The underlying issue in Rickman was the disclosure of policyholder information. There was no analysis as to whether or not that involved imminent harm or not. The court rejected the court of appeals' attempt to apply dicomes in the very way that the appellees are asking this court to do today, and we would ask this court to similarly reject that. Thank you. Thank both sides for your arguments.
judges: Hawkins, W. Fletcher, Seeborg